IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RENEE PENN, )
    Plaintiff, )
     )
v. ) Case No. 1:11cv1009
     )
MICHELE S. CUMBERLAND, ESQ., )
    Defendant. )

## MEMORANDUM OPINION

At issue on a threshold motion to dismiss in this action, brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, is whether certain legal contentions made in defensive pleadings filed by a creditor's attorney in response to a consumer's counterclaims in a state court collection action violated the FDCPA.[1]

### I.[2]

This matter arises from a state court collection action (hereinafter "the state litigation"), that is still underway in the Circuit Court of Loudoun County, Virginia. In the state litigation, Citibank (South Dakota), N.A. (hereinafter "Citibank (S.D.)") sued plaintiff Renee Penn to recover an alleged credit card debt in the amount of $16,503.45. Penn, who is represented here and in the state litigation by the same counsel, filed a three-count counterclaim. Counts I and II of the counterclaim alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and Count III alleged usury. In response to the counterclaim, defendant Michele

---

[1] "Consumer" is the term used in the FDCPA to refer to the putative debtor. *See* 15 U.S.C. § 1692a(3) ("The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt.").

[2] The allegations in plaintiff's complaint are taken as true, and the facts recited here are derived from plaintiff's complaint and the attached documents. *See Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

Cumberland, the attorney representing Citibank (S.D.) in the state litigation at that time, filed a demurrer. A demurrer is a threshold pleading which, like a Rule 12(b)(6) motion in federal court, admits the truth of all properly pleaded facts in a claim and tests only the legal sufficiency of the claim. *See* 6A Michie's Jurisprudence of Virginia and West Virginia, Demurrers, § 21 at 15. *See also Kaltman v. All American Pest Control, Inc.*, 281 Va. 483, 489 (2011). The state court sustained the demurrer with respect to Counts I and II, but overruled the demurrer with respect to Count III.[3] Penn then filed an amended counterclaim that included the same three counts, and Cumberland filed a plea in bar in response. Although a plea in bar may raise factual issues, none were raised by the plea in bar in this case. As a result, Cumberland in the plea in bar, as in the demurrer, did not challenge the facts stated in Penn's counterclaim, but only attacked the legal sufficiency of the counterclaim. *See Lee v. City of Norfolk*, 281 Va. 423, 427 (2011). By Order dated April 6, 2012, the state court overruled the plea in bar as to Count III of the counterclaim, and dismissed Counts I and II pursuant to Penn's request for a non-suit, but also granted Penn leave to add the allegations of Counts I and II to her answer as a set-off. *See Citibank (South Dakota), N.A. v. Penn*, No. CL-54694 (Circuit Court of Loudon County, Apr. 6, 2012) (Order). In so ruling, the state court did not issue an opinion or provide any reasons in the order, and the parties have not provided a transcript of the hearing.

Penn alleges nine violations of the FDCPA arising out of the demurrer and plea in bar.[4] In Counts I-IV and VII-IX, Penn alleges violations of § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the

---

[3] Although the complaint does not disclose the state court's ruling with respect to Counts I and II, both parties in their briefs acknowledge that the demurrer was sustained as to those counts.

[4] Plaintiff originally alleged ten violations, but the parties stipulated to the dismissal of Count VI. *See Penn v. Cumberland*, No. 1:11cv1009 (E.D. Va. Apr. 26, 2012) (Order) (Doc. 26).

collection of any debt." 15 U.S.C. § 1692e. Specifically, Counts I-IV allege false representations in the demurrer. Although Cumberland made no factual representations in the demurrer, but only challenged the legal sufficiency of Penn's counterclaim, Penn nonetheless alleges that the following false representations were made in the demurrer:

- Count I: Cumberland argued in the demurrer that the usury claim was too vague to answer and failed to state a claim. Penn alleges that this argument was a false representation because the usury claim was not too vague to answer and did state a claim, demonstrated by the fact that the demurrer was overruled and furthermore because Cumberland already knew or should have known the amount of interest charged and therefore had sufficient information to respond to the usury claim.

- Count II: Cumberland argued in the demurrer that there were no factual allegations that supported the usury claim. Penn alleges that this argument was a false representation because there were sufficient facts alleged to support a usury claim, demonstrated by the fact that the demurrer was overruled.

- Count III: Cumberland argued in the demurrer that there were no supporting documents from which to draw inferences that Virginia usury law was violated. Penn alleges that this was a false representation because the documents filed by Citibank (S.D.) in the state litigation supported a violation of Virginia usury law, demonstrated by the fact that the demurrer was overruled.

- Count IV: Cumberland argued in the demurrer that in order for Citibank (S.D.) to respond to the usury counterclaim, Penn must specify the dates on which the alleged violations occurred. Penn alleges that this was a false representation because Penn need not include dates for Cumberland to respond, demonstrated by the fact the demurrer was overruled and because Cumberland already knew the dates based on the records supplied by Citibank (S.D.) in the state litigation.

Counts VII-IX focus on the plea in bar. Although, as in the demurrer, Cumberland made no factual representations in the plea in bar, but only challenged the legal sufficiency of Penn's counterclaim, Penn nonetheless alleges that the following false representations were made in the plea in bar:

- Count VII: Cumberland argued in the plea in bar that the state court lacked jurisdiction over the TILA claims because the statute of limitations had passed. Penn alleges that this representation was false because the state court had jurisdiction and because the statute of limitations is not a jurisdictional bar.

- Count VIII: Cumberland argued in the plea in bar that if Penn did not rely on the account documents, then Penn failed to state a usury claim. Penn alleges that this was a false representation because in the initial counterclaim, Penn did not rely on the account documents, and the demurrer was overruled with respect to the usury claim.

- Count IX: Cumberland stated in the plea in bar that Penn had incorporated the account documents filed by Citibank (S.D.). Penn alleges that this was a false representation because she had not done so.

Penn also alleges two violations of § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Specifically, Penn alleges the following:

- Count V: Cumberland used unfair and unconscionable means when she argued that Penn must include the dates on which the usury violations occurred in the counterclaim because Citibank (S.D.)'s complaint against Penn contained no dates and, as a result, such an argument promoted an unfair and unconscionable double standard.

- Count X: Cumberland used unfair and unconscionable means by making the allegedly false representations in the plea in bar that form the basis of Counts VII, VIII, and IX because those were knowing misrepresentations in violation of the Virginia Rules of Professional Conduct.

In her motion to dismiss, Cumberland contends that all counts of the complaint fail to state a claim for relief under the FDCPA.

## II.

The standard governing resolution of a motion to dismiss is too well-established to require much elaboration here. Simply put, dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P., is appropriate where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### III.

The FDCPA was adopted to protect consumers from "collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (*quoting* S.Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696)). To accomplish this purpose, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors[.]" *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). In addition, the FDCPA provides consumers with a private right of action where "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ruggia v. Washington Mut.*, 719 F.Supp.2d 642, 647 (E.D. Va. 2010).

Initially, the FDCPA included an exemption for attorneys collecting a debt on behalf of their clients, but "in 1986, reacting to the explosion of law firms conducting debt collection businesses, Congress repealed the exemption." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 817 (8th Cir. 2012). A circuit split subsequently developed with respect to whether the FDCPA should apply to attorneys when they engage in litigation activities aimed at debt

collection.[5] In 1995, the Supreme Court resolved this split, holding that the FDCPA applies to attorneys engaged in debt-collection litigation. *See Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S.Ct. 1489 (1995). Yet importantly, the Supreme Court in *Heintz* did not clearly define or delineate "the extent to which a debt collection lawyer's representations to the consumer's attorney or in court filings during the course of debt collection litigation can violate §§ 1692d–f." *Hemmingsen*, 674 F.3d at 817. Not surprisingly, circuit and district courts have struggled since *Heintz* to define the precise scope and application of the FDCPA to litigation activities. *Id.* Although the Supreme Court has not provided extensive guidance in this regard, it has made clear that the FDCPA "should not be assumed to compel absurd results when applied to debt collecting attorneys." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1622 (2010). The issues presented in this matter, namely whether legal contentions in a demurrer and plea in bar are subject to the FDCPA, and if so, whether the contentions in the demurrer and plea in bar at issue here violate the FDCPA, are novel questions; there is no controlling circuit authority nor any published decisions from other jurisdictions that directly address these precise issues.

## IV.

As an initial matter, Cumberland argues that whether or not there were "false, deceptive, or misleading representation[s]" or "unfair or unconscionable means" employed, as proscribed by § 1692e-f, there is no FDCPA violation here because (i) the demurrer and plea in bar, while

---

[5] *Compare Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994) ("There may be abundant reasons why Congress should not regulate litigation aimed at collecting debts. But in drafting a broad statute, Congress entered all areas inhabited by debt collectors, even litigation. We must faithfully apply the law as Congress drafted it.") *with Green v. Hocking*, 9 F.3d 18, 21 (6th Cir. 1993) ("An examination of the FDCPA in context reveals that it was not intended to govern attorneys engaged solely in the practice of law. A contrary result would produce absurd outcomes.").

litigation activity, were not filed "in connection with the collection of any debt," § 1692e, or "to collect or attempt to collect any debt." § 1692f, and (ii) the demurrer and plea in bar were directed at the state court and not the consumer. Although neither argument is ultimately dispositive in this matter, both merit attention.

With respect to the first argument, it is well-established that not every communication between a debt collector and a consumer is subject to the FDCPA and that the FDCPA applies only to communications that are intended to collect a payment. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-385 (7th Cir. 2010). In determining whether a communication is intended to collect a payment, it is appropriate to consider the nature of the parties' relationship, as well as the purpose and context of the communication and whether an "animating purpose" of the communication is to induce payment. *See Gburek*, 614 F.3d at 385; *Grden*, 643 F.3d at 173. Although many cases apply the FDCPA to offensive pleadings in state collection actions,[6] the parties have not cited, and research has not disclosed, any case or commentary that addresses whether defensive pleadings filed in response to a consumer's counterclaim in a state collection action is subject to the FDCPA.[7] Penn argues that an "animating purpose" of the demurrer and

---

[6] *See, e.g., Gionis v. Javitch, Block, Rathbone, LLP*, 238 Fed.Appx. 24, 26-27 (6th Cir. 2007) (FDCPA applies to affidavit attached to complaint); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-232 (4th Cir. 2007) (FDCPA applies to interrogatories and motion for summary judgment); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472-473 (7th Cir. 2000) (FDCPA applies to complaint); *Sykes v. Mel Harris & Assoc., LLC*, 757 F. Supp. 2d 413, 423-424 (S.D.N.Y. 2010) (FDCPA applies to affidavit stating defendant had been served).

[7] Research does disclose cases holding that settlement offers made in consumer-initiated litigation do not constitute "communications" under the FDCPA. *See In re Chapman*, 49 Fed.Appx. 636, 638 (7th Cir. 2002) ("[A]s the district court properly held, settlement offers made by a defendant during the course of a consumer-initiated lawsuit do not constitute 'communications' as defined by the FDCPA[.]"). *See also Jackson-Spells v. Francis*, 45

plea in bar was to collect a debt because the counterclaim would reduce the debt, and in opposing the counterclaim, Cumberland was seeking to collect the full amount of the debt. Cumberland responds that the demurrer and plea in bar were not filed to collect a debt, but rather to defend her client against the TILA and usury claims. This is a close question, which in the end, need not be reached or decided here because, for the reasons set forth in the next section, even when applying the FDCPA to the demurrer and plea in bar, Penn has failed to state a claim for relief.

With respect to the second threshold argument, Cumberland cites a Seventh Circuit case holding that the FDCPA does not extend to communications directed to a court. *See O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941-944 (7th Cir. 2011). In *O'Rourke*, a Seventh Circuit panel determined that the purpose of the FDCPA was to protect <u>consumers</u>, and thus, a materially false and misleading exhibit that seeks to mislead a judge is not protected by the FDCPA. *Id.* Although this is an appealing argument, it is not clear that it can prevail in this circuit, as the Fourth Circuit has held that the FDCPA applies to representations in a summary judgment motion, which, like a demurer or plea in bar, is directed at the court. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-232 (4th Cir. 2007) (finding that FDCPA applies to litigation activities of attorneys in a case where the alleged violations were in a summary judgment motion and interrogatories).

V.

While Cumberland's two threshold arguments are not dispositive, Penn's § 1692e claims still must be dismissed because a review of each count reveals no plausible violation of the FDCPA. Prior to an analysis of each count individually, an initial dispute between the parties

---

F.Supp.2d 496, 497 (D. Md. 1999), *affirmed*, No. 99-1910, 1999 WL 795667 (4th Cir.1999) (unpublished order) (same).

that affects multiple counts must be addressed, namely whether a false representation must be material to violate the FDCPA and, if so, how the materiality requirement should be applied.

A.

The Sixth, Seventh, and Ninth Circuits have held that a false representation must be material to be actionable under § 1692e and, as a result, if a representation would not mislead or deceive with respect to the debt, it is not actionable, even if it is technically false. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-1034 (9th Cir. 2010); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-597 (6th Cir. 2009); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-758 (7th Cir. 2009). In other words, in order for a false statement to violate the FDCPA, it must affect a consumer's ability to make intelligent decisions with respect to the alleged debt. *See Donohue*, 592 F.3d at 1033-1034. This is an appropriate requirement not only because materiality is "an ordinary element of any federal claim based on a false or misleading statement," but also because the purpose of the FDCPA is to ensure consumers are able to make intelligent decisions and "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, 557 F.3d at 757.

Penn argues that the Fourth Circuit has not adopted the materiality requirement, and thus this requirement should not be applied here. This argument is unpersuasive. The Fourth Circuit recently determined that while courts generally require materiality for a violation of § 1692e, there is no materiality requirement with respect to a violation of § 1692e(11), which requires debt collectors to make certain disclosures in their communications with consumers. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012). In reaching this decision, the Fourth Circuit reasoned that that a violation of § 1692e(11) does not involve a false

representation, but rather the omission of an expressly required disclosure. *Id.* Thus, even if the Fourth Circuit has not expressly adopted the materiality requirement, it has certainly not foreclosed it; to the contrary, the Fourth Circuit has explicitly recognized that "courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations." *Id.* Accordingly, the sensible and persuasive guidance of the Sixth, Seventh, and Ninth Circuits is followed here. *See also Stewart v. Bierman*, --- F.Supp.2d ----, 2012 WL 1655716, at *6-8 (D. Md. 2012) (applying materiality requirement).

In determining whether a false statement is material under the FDCPA, courts typically ask whether it would mislead or deceive the least sophisticated consumer with respect to the alleged debt. *See Donohue*, 592 F.3d at 1033; *Miller*, 561 F.3d at 596-596; *Hahn*, 557 F.3d at 757-758. A key distinction between those cases and this matter, however, is that, here, the communications in question were not sent to the consumer but to the consumer's attorney and to the court.[8] In this respect, the Seventh Circuit recently held that where communications are directed at a consumer's attorney, the FDCPA does apply, but the proper inquiry is whether the representation would be false or misleading to a "competent lawyer" not to a "least sophisticated consumer." *See Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774-775 (7th Cir. 2007). Penn responds that the Fourth Circuit has applied the "least sophisticated consumer" standard without qualification in the past, and therefore the "competent lawyer" standard is not available. *See, e.g., United States v. National Financial Services, Inc.*, 98 F.3d 131, 136 (4th Cir.

---

[8] Although there is a circuit split with respect to whether communications to a consumer's attorney are covered by the FDCPA, the Fourth Circuit is on the side of the split holding that such communications are subject to the FDCPA. *Compare Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-233 (4th Cir. 2007) (communications to attorneys are covered by the FDCPA); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367-368 (3d Cir. 2011) (same) *with Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934-935 (9th Cir. 2007) (communications to attorneys are not covered by the FDCPA); *Kropelnicki v. Siegel*, 290 F.3d 118, 127-128 (2d Cir. 2002) (dicta) (same).

1996). This issue need not be reached or decided here, however, because as discussed in more detail *infra*, for those few representations that are arguably false, they cannot be considered material under either standard; they would not mislead or deceive either a "competent attorney" or a "least sophisticated consumer" with respect to the alleged debt.

Penn suggests that the materiality requirement, if applied, should be based not on the impact of the statement on the consumer or the consumer's attorney, but rather based on (i) whether the statement is material to the efforts to collect the debt, or (ii) whether the statement is material to the recipient of the statement. With respect to the first proposed standard, Penn argues that because the allegedly false statements were in the demurrer and plea in bar, they could have resulted in the dismissal of the counterclaim, and therefore are material to the collection of the debt. This argument, for which Penn cites no authority, fails to persuade; the fact that a statement is in a significant court document does not make it material *per se*, but rather one must look at the statement itself, in context, to determine whether it is material. *See Donohue*, 592 F.3d at 1033 (false statement in a complaint is immaterial); *Miller*, 561 F.3d at 596 (same); *Hahn*, 557 F.3d at 757-758 (same).

With respect to his second suggestion, Penn appears to be calling for a "reasonable judge" standard, as the judge is the decision-maker to whom the demurrer and plea in bar were directed. The rationale for such a standard is not without force, but does not save Penn's claims here. For the reasons set forth *infra*, those few representations in the demurrer and plea in bar that are arguably false cannot be considered material under a "reasonable judge" standard any more than under a "competent attorney" or "least sophisticated consumer" standard. And, it is certainly worth noting that Penn never alleges, either in the complaint or in her briefs, that any of

the allegedly false statements had the potential to mislead or deceive a "reasonable judge," a "competent attorney," or a "least sophisticated consumer."

**B.**

A review of each of the allegedly false representations demonstrates that they are either not false or, where arguably false, not material.

Count I. The first allegedly false representation is Cumberland's argument in the demurrer that the usury counterclaim was too vague to answer and failed to state a claim. Penn alleges that the usury claim was neither too vague to answer nor did it fail to state a claim, as demonstrated by the fact that the demurrer was overruled and that Cumberland knew or should have known what interest was charged on the debt and therefore had the necessary information. Although the demurrer was overruled, that alone does not make Cumberland's legal argument false. *See Hemmingsen*, 674 F.3d at 819 (nothing false or misleading about attorney filing an unsuccessful motion for summary judgment). *See also Heintz*, 514 U.S. at 296 ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'").[9] And a review of the state pleadings attached to Penn's complaint in this action demonstrates that it was entirely appropriate for Cumberland to raise arguments attacking the usury claim. With respect to the vagueness of the counterclaim, Penn's threadbare filing fails to identify the interest charges alleged to be usurious or even precisely which usury statute was allegedly violated. Even if Cumberland knew or should have known what charges were usurious, it is Penn's burden to include "sufficient

---

[9] Moreover, the decision to overrule the usury claims in the demurrer and plea in bar was a non-final decision that may be modified at any time by the state court and is not entitled to preclusive effect. *See Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (final judgment required for claim preclusion); *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (final judgment required for issue preclusion).

allegations of material facts to inform a defendant of the nature and character of the claim." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). Moreover, with respect to the argument that Penn failed to state a claim under Virginia usury law, Cumberland clearly had a sound basis to challenge the claim's legal sufficiency. This is so because Citibank is a national bank based in South Dakota, and as such, not subject to Virginia usury law. *See Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 738, 116 S.Ct. 1730 (1996) (*citing Marquette Nat. Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 99 S.Ct. 540 (1978)) ("[National Bank Act] authorizes a national bank to charge out-of-state credit-card customers an interest rate allowed by the bank's home State, even when that rate is higher than what is permitted by the States in which the cardholders reside.").[10] As a result, Penn's Virginia usury claim appears to fail as a matter of law.[11] Thus although the state court overruled the demurrer, Cumberland did not make a false representation in arguing that the sparse pleading was too vague and failed to state a claim. *See Smiley*, 517 U.S. at 738.[12]

Count II. The second allegedly false representation is Cumberland's argument in the demurrer that there were no factual allegations that supported the usury claim. For the same reasons as discussed with respect to Count I, this statement cannot be considered false. Rather,

---

[10] *See also Citibank, South Dakota, N.A. v. Palma*, 184 N.C.App. 504, 507-508 (N.C. App. 2007) ("[The National Bank Act] completely preempts... state usury laws, and Defendant's only remedy exists under the laws of South Dakota, the state in which Plaintiff is located.").

[11] Furthermore, as Cumberland points out in the plea in bar, even if Penn brought a claim under South Dakota law, it is not clear that she was entitled to relief. *See Hawkins v. Citicorp Credit Services, Inc.*, 665 F.Supp.2d 518, 522-523 (D. Md. 2009) (*citing* S.D. Codified Laws § 54-3-13) (South Dakota law does not limit interest rate charged by Citibank (S.D.)).

[12] Because there were no material false statements, there was no violation of the FDCPA and therefore no need to consider whether a bona fide error defense may be available to Cumberland.

Cumberland was making the well-founded argument that Citibank (S.D.) was not subject to Virginia usury law.

<u>Count III.</u> The third allegedly false representation is Cumberland's argument in the demurrer that there were no documents from which to draw inferences to support the usury claim. Again, for the same reasons as discussed with respect to Count I, this statement cannot be considered false. Rather, Cumberland was making the well-founded argument that no documents existed that would support the claim because Citibank (S.D.) is not subject to Virginia usury law.

<u>Count IV.</u> The fourth allegedly false representation is Cumberland's argument in the demurrer that in order for Citibank (S.D.) to respond to the usury claim, Penn must specify the date on which the allegedly usurious transactions occurred. Penn alleges that this was a false representation because Penn need not include dates for Citibank (S.D.) to respond, demonstrated by the fact the demurrer was overruled and because Cumberland knew the dates based on the records supplied by Citibank in the state litigation. But once again, there is nothing false about Cumberland raising this argument. Penn's usury counterclaim included essentially no facts, and it was not improper or false for Cumberland to argue that such a threadbare claim was insufficient. *See CaterCorp, Inc.*, 246 Va. at 24 (it is a plaintiff's burden to include "sufficient allegations of material facts to inform a defendant of the nature and character of the claim."). And, as discussed *supra*, the state court's overruling of the demurrer is not dispositive on this point. *See Hemmingsen*, 674 F.3d at 819 (nothing false or misleading about attorney filing an unsuccessful motion for summary judgment). Moreover, even if this argument were somehow construed as false, it could not be considered materially false. It would not mislead or deceive a "competent attorney" or a "least sophisticated consumer" with respect to the debt, but instead

would result, at most, in requiring them to provide the dates in question. Nor would a state court judge be misled or deceived by such an argument, but rather would simply determine whether the dates were necessary for the counterclaim to survive.

Count VII. The next allegedly false representation is Cumberland's argument in the plea in bar that the state court lacked jurisdiction over the TILA claims because the statute of limitations had expired. As an initial matter, Cumberland was fully justified in asserting a statute of limitations defense; more than a year had passed from the date of the alleged violations. *See* 15 U.S.C. § 1640 (one year statute of limitations for TILA claims). Moreover, to the extent that Cumberland's use of the term "jurisdiction" was technically false because the statute of limitations is not a jurisdictional bar to a TILA claim,[13] this cannot be considered a materially false statement. In the plea in bar, Cumberland properly acknowledges that Penn may be entitled to equitable tolling, and proceeds to assert that Penn failed to plead adequate facts for equitable tolling to apply. As a result, in substance, Cumberland's representations of law were not false; they were fully warranted in the circumstances. In short, Cumberland's use of the word "jurisdiction," while not technically proper, does not result in a material false representation. The decisions of a "competent attorney," a "least sophisticated consumer," or a "reasonable judge" would not be affected by the use of the term "jurisdiction" in the circumstances.

Count VIII. The next allegedly false representation is Cumberland's argument in the plea in bar that if Penn does not rely on the account documents, then Penn fails to state a usury claim under Virginia law. Penn alleges that the falsity of that statement is demonstrated by the fact that in the demurrer, Penn did not rely on the account documents and the usury claim survived. But

---

[13] *See Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706-708 (11th Cir. 1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 501-504 (3d Cir. 1998); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984); *King v. California*, 784 F.2d 910, 914-915 (9th Cir. 1986); *Barnes v. West, Inc.*, 243 F.Supp.2d 559, 561-562 (E.D. Va. 2003).

for the reasons set forth with respect to Count I, Cumberland's argument that the Virginia usury claim fails as a matter of law is well-founded, not false. Simply because Cumberland renewed this argument in the plea in bar, after the state court overruled it with respect to the demurrer, does not make it false.

<u>Count IX.</u> Finally, Penn alleges that in the plea in bar, Cumberland falsely stated that Penn's counterclaim incorporated the account documents submitted to the court by Citibank (S.D.). Penn argues this statement was false because Penn had not attached these documents to any of her filings and in Virginia, a document is not incorporated into a pleading unless it is attached. *See* Va. Sup. Ct. Rule 1:4(i) ("The mention in a pleading of an <u>accompanying</u> exhibit shall, of itself and without more, make such exhibit a part of the pleading.") (emphasis added). But prior to stating that Penn had incorporated the documents, Cumberland argued that because Penn referenced the documents to support her usury claim, which Penn did, it was appropriate to look to those same documents to confirm that South Dakota law applies. As a result, in context, it does not appear that Cumberland is asserting that Penn had attached the documents to her pleading, but rather arguing that it is appropriate to consider the documents because they were cited by Cumberland as a substantive part of her pleading. Even if such an argument would fail in state court (although it would likely be successful in federal district court),[14] there is nothing false in Cumberland arguing that the documents should be considered in these circumstances. And furthermore, even if Cumberland's use of the word "incorporated" was technically false, it cannot be considered a material falsehood. Both parties and the state court judge knew that Penn

---

[14] *See Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396, 2006 WL 228621, at *1 (4th Cir. 2006) (unpublished) (Typically on a motion to dismiss, a court cannot consider documents that are not expressly incorporated into a complaint, but there are exceptions for "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.")

had not attached the documents to her counterclaim, and Cumberland's use of the term "incorporated" would not change anyone's understanding of that obvious fact.

## VI.

Penn also asserts two violations of § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Congress did not define "unfair or unconscionable" but did provide a non-exhaustive list of examples, none of which is asserted by Penn here. Relying on the plain meaning of the statute's terms, courts have considered an action unfair where it is "marked by injustice, partiality, or deception," and unconscionable when it is "unscrupulous," "show[s] no regard for conscience," or "affront[s] the sense of justice, decency, or reasonableness." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (citations omitted). Actions that violate § 1692f include the collection of any amount unless it is expressly authorized by the agreement creating the debt or permitted by law,[15] misuse of postdated checks,[16] or filing a debt collection lawsuit without the necessary state license.[17]

Given this framework, it is clear that the actions Penn alleges violate § 1692f cannot plausibly be considered unfair or unconscionable. In Count V, Penn alleges that Cumberland's argument in the demurrer that Penn must provide dates for the alleged violation of Virginia usury law was unfair and unconscionable because the complaint filed by Citibank (S.D.) included no dates. In this respect, Penn argues that Cumberland was advocating a double standard, one especially insidious because it suggests that large banks play by one set of rules, and consumers

---

[15] *See* 15 U.S.C. § 1692f(1).

[16] *See* 15 U.S.C. § 1692f(2), (3), (4).

[17] *See Hauk v. LVNV Funding, LLC*, 749 F.Supp.2d 358, 366 (D. Md. 2010).

by another. But Cumberland was not advocating a double standard; rather she was raising a proper challenge to the legal sufficiency of Penn's threadbare counterclaim. Although the state court determined that Penn's counterclaim survived, it was hardly unfair or unconscionable for Cumberland to make such an argument in defense of her client, and moreover, nothing prevented Penn's attorney from raising the same defense in response to Citibank (S.D.)'s complaint.

In Count X, Penn alleges that Cumberland violated the Virginia Rules of Professional Conduct by knowingly making the allegedly false statements that form the basis of Counts VII, VIII, and IX. *See* Rule 4.1, Virginia Rules of Professional Conduct ("In the course of representing a client a lawyer shall not knowingly... make a false statement of fact or law[.]"). While it is true that a violation of state law or ethical rules may form the basis of a § 1692f claim where such violations amount to an unfair or unconscionable means to collect a debt, it is abundantly clear that there was no unfair or unconscionable means employed here and, if there was a violation of the Virginia Rules of Professional Conduct, it was a minor, technical violation, at most. With respect to Count VIII, Cumberland did nothing unfair or unconscionable, or even false, by re-raising the argument that Penn had failed to state a claim. And with respect to Counts VII and IX, even if Cumberland misused the technical terms "jurisdiction" and "incorporated" in the plea in bar, when viewed in context, the substance of each broader legal argument was well-founded and neither argument can be considered unfair or unconscionable, even if unsuccessful.

Moreover, Count X also fails because Penn does not allege any conduct in it separate from the conduct that forms the basis of the § 1692e claims. *See Stewart v. Bierman*, --- F.Supp.2d ----, 2012 WL 1655716, at *8-9 (D. Md. 2012) (§ 1692f claim must be dismissed if it fails to allege any conduct separate and distinct from § 1692e claims); *Foti v. NCO Fin. Sys.*, 424

F.Supp.2d 643, 667 (S.D.N.Y. 2006) (finding that complaint was "deficient in that it does not identify any misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA").

## VII.

Accordingly, for the foregoing reasons, Cumberland's motion to dismiss must be granted. There is of course no doubt in this circuit that a creditor's attorney's statements and pleadings in debt-collection litigation are subject to the FDCPA, even when the consumer is represented by an attorney. *See Sayyed*, 485 F.3d at 229-232. *See also McLean v. Ray*, No. 11-1544, 2012 WL 2899319, at *4 (4th Cir. 2012) ("False statements in the course of litigation constitute violations of the act."). But, as this case demonstrates, it is equally clear that the filings and pleadings of a creditor's attorney cannot be said to run afoul of the FDCPA merely because they are unsuccessful or contain immaterial technical errors. To reach a result contrary to the result reached here would qualify as one of the absurd results that the Supreme Court has warned against in applying the FDCPA. *See Jerman*, 130 S.Ct. at 1622.

An appropriate Order will issue.

Alexandria, Virginia
July 25, 2012

/s/
_____
T. S. Ellis, III
United States District Judge